Matthew R. Wojcik, WSBA #27918
matt.wojcik@bullivant.com
Brittany A. Madderra, WSBA #48514
brittany.madderra@bullivant.com
BULLIVANT HOUSER BAILEY PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Tel: (206) 292-8930
Fax: (206) 386-5130

Jeffrey S. Behar, California State
Bar # 81565 (*pro hac vice pending*)
jbehar@fwhb.com
Tina I. Mangarpan, California State
Bar # 117898 (*pro hac vice pending*)
tmangarpan@fwhb.com
FORD, WALKER HAGGERTY & BEHAR LLP
One World Trade Center, 27th Floor
Long Beach, California 90831
Tel: (562) 983-2500
Fax: (562) 590-3525

*Attorneys for Plaintiff, Old Republic
Aerospace, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| OLD REPUBLIC AEROSPACE, INC., | No.: _____ |
| Plaintiff, | |
| v. | COMPLAINT |
| TAMARACK AEROSPACE GROUP, INC., | |
| Defendant. | |

COMPLAINT

PAGE 1

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

Plaintiff, Old Republic Aerospace, Inc. ("Old Republic"), by and through undersigned counsel, alleges as follows:

## I.      JURISDICTION AND VENUE

1.      Original subject matter jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. § 1332(a)(3) as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

(a)      Plaintiff Old Republic Aerospace, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Georgia.

(b)      Defendant Tamarack Aerospace Group, Inc. is a corporation organized and existing under the laws of the State of Washington with its principal place of business in the State of Idaho.

2.      Personal jurisdiction is properly exercised over Defendant Tamarack Aerospace Group, Inc. through the principles of general jurisdiction and specific jurisdiction in that:

(a)      Defendant Tamarack Aerospace Group, Inc. is a corporation which is incorporated in and "at home" in the State of Washington.

(b)      The exercise of personal jurisdiction over Defendant Tamarack Aerospace Group, Inc. further complies with the due process requirements under the

Constitution of the State of Washington and the Constitution of the United States of America.

3.     Venue of this action in the United States District Court for the Eastern District of Washington is proper under 28 U.S.C. § 1391(b) in that Defendant Tamarack Aerospace Group, Inc. resides and transacts business in the district and a substantial part of the events or omissions giving rise to the claim occurred in the district.  Jointly or in the alternative, venue is proper in this district pursuant to 28 U.S.C. § 157(b)(5) in that the bankruptcy case relating to Defendant Tamarack Aerospace Group, Inc. Case No. 19-01492-FPC11, was venued in the United States District Court for the Eastern District of Washington  and on February 13, 2020, the following lawsuits were filed in this district court against Defendant Tamarack Aerospace Group, Inc. in relation to the same underlying events as this litigation:

(a)     Erica Davis as Personal Representative of the Estate of Andrew Dale Davis, deceased, and minor children, JC, minor child, SD, minor child, Case No 2-2020-00060.

(b)     Michael M. Maschmeyer, as Personal Representative of the Estate of R. Wayne Estopinal, Case No. 2-2020-00061; and

(c)     James Johnson and Bradley Herman, individually and as Independent Co-Administrators of the Estate of Sandra Johnson, Case No. 2-2020-00062.

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

## II. FACTS

4. On or about September 30, 2005, the United Stated Federal Aviation Administration approved the design of a certain model aircraft known as the Cessna Model 525A airplane under FAA Type Certificate No. A1WI.

5. In or about March 2009, Cessna Aircraft Company, manufactured and sold a certain Cessna Model 525A, airframe serial number 525A0449 ("Subject Airplane"), to EstoAir, LLC, a limited liability company, the design of which conformed to the design approved FAA Type Certificate No. A1WI.

6. On or about September 3, 2013, Defendant Tamarack Aerospace Group, Inc. entered into an Order Deposit Contract with EstoAir, LLC for the purchase and installation of the Tamarack ATLAS Winglets, which was a load alleviation system also known as the Tamarack Active Winglets system, on the Subject Airplane.

7. To expedite the certification process for the Tamarack Active Winglets system, Defendant Tamarack Aerospace Group Inc.'s Supplemental Type Certificate was originally issued through the European Aviation Safety Agency ("EASA") to Cranfield Aerospace Solutions Ltd., based in the United Kingdom. The Federal Aviation Administration ("FAA") issued Import Supplemental Type Certificate No. SA03842 to Cranfield Aerospace Solutions Ltd. on December 27, 2016. Cranfield Aerospace Solutions Ltd. transferred the certificate to Defendant

COMPLAINT

PAGE 4

Tamarack Aerospace Group Inc. and the FAA issued Supplemental Type Certificate SA03842NY.

8.    Following the original issuance of FAA Import Supplemental Type Certificate No. SA03842, Cranfield Aerospace Solutions Ltd. applied for and was granted amendments to the said Supplemental Type Certificate No. SA03842, specifically including Cessna Model 525A airplanes.

9.    The type design changes approved under Supplemental Type Certificate No. SA03842 relating to the Cessna Model 525A airplane included:

i.    Installation of the Tamarack ATLAS Winglets in accordance with Cranfield Aerospace Service Bulletin CA/DD/SB1375 Rev L dated February 2018 or later EASA approved revisions.

ii.    For Continued Airworthiness, reference to Cranfield Aerospace Aircraft Maintenance Manual Supplement CA/DD/M021 Issue J dated December 2017 or later EASA accepted revisions; and

iii.    Operating the aircraft in accordance with Cranfield Aerospace Flight Manual Supplement CAS/AFM0004 Issue A (R1) dated February 2018 or later EASA approved revisions.

10.    On or about May 28, 2018, Defendant Tamarack Aerospace Group, Inc. installed the Tamarack Active Winglets system on the Subject Airplane pursuant to and in accordance FAA Import Supplemental Type Certificate No. SA03842, including all limitations and conditions applicable thereto.

11.    On May 28, 2018 and at all times herein relevant, Defendant Tamarack Aerospace Group, Inc. held several United States patents that were incorporated into

the design of the Tamarack Active Winglets system that was installed on the Subject Airplane, including patent numbers US 8,684,385 B2 and US 9,764,825 B2.

12.    The Tamarack Active Winglets system installed on the Subject Airplane was designed, manufactured, assembled, and sold by Defendant Tamarack Aerospace Group, Inc.

13.    Subsequent to the installation of the Tamarack Active Winglets on the Subject Airplane on May 28, 2018, through and including November 30, 2018, Defendant Tamarack Aerospace Group, Inc. provided Instructions for Continued Airworthiness regarding the Tamarack Active Winglets system, and customer support and engineering services relating to the Subject Airplane and other airplanes modified under FAA Import Supplemental Type Certificate No. SA03842.

14.    On November 30, 2018, the Subject Airplane was being operated pursuant to 14 C.F.R. Part 91 on a flight from Clark County Regional Airport in Sellersburg, Indiana with an intended destination of Chicago Midway International Airport in Chicago, Illinois.

15.    On November 30, 2018, and after takeoff for the aforesaid flight, the subject Airplane with the said Tamarack Active Winglets product in place thereon deviated from controlled flight and crashed into trees and the ground in Clark County, Indiana at approximately 10:28 a.m. EST, killing all three persons on board, including Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson

COMPLAINT

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

(collectively "the decedents"). The subject Airplane with the said Tamarack Active Winglets product in place thereon was destroyed in the crash, its wreckage strewn over an estimated 300-yard debris field.

16.    The decedents were officers and/or employees of Old Republic's insured, TEG Architects, LLC.

17.    At the time of the crash, the subject Airplane was insured under a Corporate Aircraft insurance policy issued by Old Republic, policy number CA00300602, to its insureds, TEG Architects, LLC and EstoAir LLC.

18.    Pursuant to this Corporate Aircraft insurance policy:

(a)    Old Republic paid to its insureds the sum of $4,625,000, the insured value of the subject Airplane.

(b)    On behalf of its insureds, Old Republic further paid for property damage caused by the crash and paid for expenses incurred as a consequence of the crash, including but not limited to costs associated with recovering the remains of the subject Airplane; and

(c)    On behalf of its insureds, Old Republic further made payment to the decedents' statutory beneficiaries.

19.    Pursuant to the terms of the Corporate Aircraft insurance policy, Old Republic receives from its insureds the assignment of its insureds' rights of recovery against third parties for property damage suffered to the extent said losses are paid

by Old Republic.

20.    By virtue of payment under the Corporate Aircraft insurance policy, Old Republic is also equitably subrogated to the rights of its insureds, as well as the rights of the decedents to the extent Old Republic made payments to the statutory beneficiaries of the decedents, and the rights of third-parties compensated for property damage caused by the crash.

## III.    CAUSES OF ACTION

### (First Action – Product Liability – Chapter 7.72 RCW)

21.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

22.    The subject Tamarack Active Winglets system is a product under RCW 7.72.010(3) because it is an object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts and produced for introduction into trade or commerce.

23.    Defendant Tamarack Aerospace Group, Inc. is a manufacturer under RCW 7.72.010(2) as said Defendant designed, produced, made, fabricated, and/or constructed the subject Tamarack Active Winglets system.

24.    Defendant Tamarack Aerospace Group, Inc. is a product seller under RCW 7.72.010(1) as said Defendant was engaged in the business of selling products, specifically including the subject Tamarack Active Winglets system.

25.    Plaintiff is a claimant under RCW 7.72.010(5) as it is an entity asserting a product liability claim.

26.    On November 30, 2018 and at all relevant times, the subject Tamarack Active Winglets system was not reasonably safe as designed and not reasonably safe because adequate warnings or instructions were not provided, including but not limited to the following:

(a)    The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the controllability and maneuverability requirements of 14 C.F.R. Part 23, Subpart D are met within a practical operational flight envelope, contrary to and in violation of FAA Special Condition SC 23.672(d)(1);

(b)    The load alleviation system failed to comply with the requirement that while the system is active or after any single failure that the trim, stability, and stall characteristics are not impaired below a level needed to permit continued safe flight and landing, contrary to and in violation of FAA Special Condition SC 23.672(d)(2);

(c)    The load alleviation system failed to comply with the requirement that proper precautions be taken to prevent inadvertent or improper operation of the load alleviation system, contrary to and in violation of FAA Special Condition SC 23.677(a);

(d)    The load alleviation system failed to comply with the requirement that when any one connecting or transmitting element in the primary flight control system fails, adequate control for safe flight and landing is available, contrary to and in violation of FAA Special Condition SC 23.677(b);

(e)    The load alleviation system failed to comply with the requirement that it be irreversible unless the control surface is

adequately balanced and/or have no unsafe flutter characteristic, contrary to and in violation of SC 23.677(c);

(f) The load alleviation system failed to comply with the requirement that it have adequate rigidity and reliability, contrary to and in violation of SC 23.677(c);

(g) The load alleviation system failed to comply with the requirement that the airplane be safely controllable and a pilot be able to perform all maneuvers and operations necessary to affect a safe landing following any load alleviation system runaway not shown to be extremely improbable, contrary to and in violation of FAA Special Condition SC 23.677(d);

(h) The load alleviation system failed to comply with the requirement that during operation the flight control system and load alleviation system were free from jamming, excessive friction, and/or excessive deflection, contrary to and in violation of FAA Special Condition SC 23.683(a);

(i) The load alleviation system failed to comply with the requirement that it not restrict or prevent aileron control surface movements or cause an adverse response of the ailerons, contrary to and in violation of Special Condition SC 23.683(b);

(j) The load alleviation system failed to comply with the requirement that it be tested to and therefore capable of continuing safe flight with the limit loads prescribed by Special Condition SC 23.683(c) contrary to and in violation of Special Condition SC 23.683(c);

(k) The load alleviation system failed to comply with the requirement that it be designed and installed to prevent jamming, chafing, and interference from cargo, passengers, loose objects or the freezing of moisture, contrary to and in violation of Special Condition SC 23.685(a);

(l) The load alleviation system failed to comply with the requirement that it not be susceptible to entry of foreign objects into places where they would jam any connecting or transmitting

element contrary to and in violation of Special Condition SC 23.685(a);

(m)   The load alleviation system failed to comply with the requirement that it be distinctively and permanently marked, to minimize the possibility of incorrect assembly that could result in malfunction of the control system contrary to and in violation of Special Condition SC 23.685(c);

(n)   The load alleviation system failed to comply with the requirement that it be designed so that during normal operation, when the surface has been placed in any position, it will not move from that position unless the control is adjusted or moved by the operation of the system, contrary to and in violation of Special Condition SC 23.697(a);

(o)   The load alleviation system failed to comply with the requirement that the rate of movement of the control surface in response to the load alleviation system controls must give satisfactory flight and performance characteristics under steady and changing conditions of airspeed, engine power, attitude, flap configuration, speedbrake position, and during landing gear extension and retraction, contrary to and in violation of FAA Special Condition SC 23.697(b);

(p)   The load alleviation system failed to comply with the requirement that it be synchronized by a mechanical interconnection between the moveable surfaces or by an approved equivalent means, contrary to and in violation of Special Condition SC 23.701(a);

(q)   The design of the load alleviation system failed to comply with the requirement that the occurrence of any failure of the system that would result in an unsafe flight characteristic of the airplane is extremely improbable, contrary to and in violation of FAA Special Condition SC 23.701(a)(2);

(r)   The load alleviation system failed to comply with the requirement that the airplane must be shown to have safe flight characteristics with any combination of extreme positions of

COMPLAINT

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

individual movable surfaces, contrary to and in violation of FAA Special Condition SC 23.701(b);

(s)    The load alleviation system failed to comply with the requirement that it be designed to account for unsymmetrical loads resulting from flight with the engines on one side inoperative or at reduced power, contrary to and in violation of Special Condition SC 23.701(c);

(t)    The load alleviation system failed to comply with the requirement for the continuation of the flight of the airplane in the system failed state, contrary to and in violation of paragraph 2(f)(2) of FAA Special Conditions No. 23–279A–SC;

(u)    The load alleviation system failed to comply with the requirement that after any single failure of the load alleviation system, the airplane was safely controllable when the failure or malfunction occurred at any speed or altitude within the approved operating limitations critical for the type of failure considered, contrary to and in violation of FAA Special Condition SC 23.672(c);

(v)    The load alleviation system failed to comply with the requirement that it must permit counteraction of failures without requiring exceptional pilot skill or strength by either deactivation of the system or by overriding, contrary to and in violation of FAA Special Condition SC 23.672(b);

(w)    The load alleviation system failed to comply with the requirement that a warning, which is clearly distinguishable to the pilot under expected flight conditions without requiring the pilot's attention, must be provided for any failure in the load alleviation system that could result in an unsafe condition, contrary to and in violation of FAA Special Condition SC 23.672(a);

(x)    The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.675 requiring the control system to include a mechanism to positively limit the range of motion and that

these mechanisms not adversely affect safety of flight contrary to and in violation of Special Condition 23;

(y)   The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.681 because the testing was not performed at the most severe loading and therefore the structure is not constructed to withstand the most sever loading contrary to and in violation of Special Conditions;

(z)   The load alleviation system failed to comply with the requirement that it comply with the airworthiness standard set forth in 14 CFR § 23.693 because the certain joints subject to angular motion be designed to a specified factor of safety contrary to and in violation of Special Conditions;

(aa)   The load alleviation system failed to comply with the requirement that it be designed taking into consideration all conditions that could be encountered up to the point where the limit load is reached including but not limited to the effect of nonlinearities must be investigated beyond limit conditions to ensure the behavior of the system presents no anomaly compared to the behavior below limit conditions contrary to and in violation of Special Conditions 2(e)(1);

(bb)   The load alleviation system failed to comply with the requirement that it be designed to meet the aeroelastic stability requirements of § 23.629 contrary to and in violation of Special Conditions 2(e)(3);

(cc)   The load alleviation system otherwise failed to meet the applicable provisions of the mandatory government regulations incorporated by reference in FAA Type Certificate No. A1W1 contrary to the Type Certification Basis requirement contained in FAA Special Conditions No. 23–279A–SC;

(dd)   The subject Tamarack Active Winglets system was not reasonably safe as designed under RCW 7.72.030(1)(a) because at the time of manufacture, the likelihood that the product would cause harm or similar harms, and the seriousness of those harms,

COMPLAINT

PAGE 13

outweighed the burden on Defendant to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product;

(ee)    The subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions for the system were not provided under RCW 7.72.030(1)(b) because at the time of the manufacture, the likelihood that the product would cause harm or similar harms and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate;

(ff)    The subject Tamarack Active Winglets system was not reasonably safe under RCW 7.72.030(3), and the subject system's warnings and instructions were not reasonably safe under RCW 7.72.030(3) because its warnings and instructions were unsafe to an extent beyond that which would be contemplated by the ordinary consumer;

(gg)    The subject Tamarack Active Winglets system was not reasonably safe because adequate warnings or instructions were not provided after the Tamarack Active Winglets system was manufactured under RCW 7.72.030(1)(c). Defendant learned or should have learned about a danger connected with the product after it was manufactured. Defendant failed to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances;

(hh)    The subject Tamarack Active Winglets system was not reasonably safe in construction under RCW 7.72.030(2) for which Defendant is strictly liable because the product did not conform to the manufacturer's express warranty and did not conform to the implied warranties under Title 62A RCW.

COMPLAINT                                                PAGE 14    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

27.     On November 30, 2018 and as a direct and proximate result of one or more of the foregoing conditions of the subject Tamarack Active Winglets system that were not reasonably safe, the subject Airplane was caused to and did deviate from controlled flight and crashed in Clark County, Indiana, killing Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson, destroying the subject Airplane, and damaging property in the vicinity.

28.     At the time of their deaths, the decedents Andrew Dale Davis, R. Wayne Estopinal, and Sandra Johnson were all survived by statutory beneficiaries under RCW 4.20.020.

29.     Pursuant to the Corporate Aircraft insurance policy under which the subject Airplane was insured at the time of the crash, Old Republic paid to its insureds the sum of $4,625,000, the insured value of the subject Airplane.  On behalf of its insureds, Old Republic further paid for property damage caused by the crash, and paid for expenses incurred as a consequence of the crash, including but not limited to costs associated with recovering the remains of the subject Airplane. Additionally, on behalf of its insureds, Old Republic further paid claims made on behalf of the decedents' statutory beneficiaries.   Plaintiff Old Republic brings this subrogation action against Defendant to recover those amounts paid under the policy under Chapter 7.72 RCW.

COMPLAINT

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

WHEREFORE Plaintiff, Old Republic, prays that judgment be entered in its favor and against Defendant Tamarack Aerospace Group, Inc. in a sum according to proof.

**(Second Action – Breach of Express Warranty - RCW 62A.2-313)**

30.    Plaintiff incorporates all preceding paragraphs by reference as though fully set forth herein.

31.    Defendant Tamarack Aerospace Group Inc. is and was at all times a "merchant" with respect to the subject Tamarack Active Winglets system under RCW 62A.2-104(1).

32.    The subject Tamarack Active Winglets are and were at all relevant times "goods" under RCW 62A.2-105(1).

33.    Defendant Tamarack Aerospace Group, Inc. marketed the subject Tamarack Active Winglets system as a feature that improved the safety, reliability, and performance of planes fitted with the subject Tamarack Active Winglets system.

34.    As of September 2013, Defendant Tamarack Aerospace Group, Inc. represented on its website that "Tamarack Aerospace Group, Inc. revolutionizes the aircraft industry with the introduction of the world's first Active Winglet™. The Active Winglet™ provides all the advantages of passive winglets with none of the drawbacks — making all other passive winglet technology obsolete."

COMPLAINT                                               PAGE 16    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

35.    Between 2013 and May 2018, Defendant Tamarack Aerospace Group, Inc. made numerous representations on its website regarding the safety, reliability, performance, and characteristics of the Tamarack Active Winglets system, including but not limited to:

i.    "Do they help the plane's performance? Winglets allow the airplane to climb faster getting to cruising altitude sooner. They reduce required fuel flow during cruise. They reduce the stall speed which means slower, safer landings. Take offs are shorter. Single engine climb performance is increased. Single engine drift-down is reduced. And high-altitude handling qualities are enhanced. In terms of handeling, [sic] most pilots report that an aircraft with winglets feels more 'solid' in the air than one without."

ii.    "What is the difference between Active and passive winglets? Winglets were invented in 1897 by Frederic W. Lanchester. All passive winglet designs since have had to make a design tradeoff between efficiency and wing strength. A winglet installed with ATLAS™ is an Active Winglet and allows any aircraft to be retrofitted with winglets with no compromise in aerodynamic efficiency due to wing stress issues."

iii.    "What are the advantages of Active vs. passive winglets? Making a wing more efficient with any winglet comes from more evenly distributing the aerodynamic loading on the wing to reduce drag; but this always introduces more bending load in the wing. The purpose of ATLAS™ is to actively reduce the bending load in the wing during rare, high flight load conditions. This means a Tamarack winglet can be designed for peak efficiency. No compromises."

iv.    "What kind of plane is best suited for active winglets? Any aircraft with wings! ATLAS™ allows any aircraft to be retrofitted with winglets with no compromise in aerodynamic efficiency due to wing stress issues."

v.    "Does ATLAS™ smooth the ride? Yes. In fact, Boeing was targeting air sickness with the gust alleviation system on the 787

because it makes the ride better in turbulence."

vi. "How reliable is the ATLAS™? The most critical failure of any system like ATLAS™ would be a failure without illumination of the warning light.  This type of failure of ATLAS™ has been calculated to be less than 1 failure for every 1 Billion flight hours. This means that <u>even</u> if there is a failure, the pilot will know it and can continue flying at a speed that is safe for the rest of the flight."

vii. "Does ATLAS™ tie into other aircraft flight control systems? No, unlike other load alleviation systems ATLAS™ does not connect or interface with any other flight control system.  Complete independence provides increased safety and versatility."

viii. "With the ATLAS® Active Winglet system; load alleviation, wing extension and winglets achieve 3 to 4 times more fuel savings than Passive Winglets do. The ATLAS® Active Winglet system increases aircraft stability and smooths out the bumps of inflight turbulence. The ATLAS® system will also allow an increase in max zero fuel weight as well as provide better high/hot take off performance."

ix. "Anyone using Tamarack® technology will receive its substantial performance, economic and safety benefits on every single flight for the life of the airplane. I am not aware of any technology this good in all of aviation past or present." Scott Erickson, CFII, MEI, ATP.

36.    Defendant Tamarack Aerospace Group, Inc. also represented that the subject Tamarack Active Winglets system conformed to all applicable airworthiness standards and FAA Special Conditions, when in fact, it did not.

37.    Defendant Tamarack Aerospace Group, Inc. made statements, including the representations specifically identified above, to the public and to Plaintiff's insureds about the safety, reliability, performance, and characteristics of the subject Tamarack Active Winglets system.

COMPLAINT

PAGE 18    **Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

38.     These statements constitute express warranties, because they are affirmations of fact or promise, or a description of the product, which formed the basis of the bargain with Plaintiff's insureds and to which the product did not conform in violation of RCW 62A.2-313.

39.     These statements constitute express warranties, because they misrepresented material facts concerning the character and quality of the subject Tamarack Active Winglets system upon which Plaintiff's insureds justifiably relied.

40.     Defendant Tamarack Aerospace Group, Inc. breached said express warranties in that the subject Tamarack Active Winglets system was not reasonably safe and did not improve the safety, reliability, and performance of the subject Airplane fitted with the subject Tamarack Active Winglets system as advertised. To the contrary, the subject Tamarack Active Winglets system caused the subject Airplane to deviate from controlled flight and crash into trees and the ground in Clark County, Indiana on November 30, 2018.

41.     Defendant Tamarack Aerospace Group, Inc.'s breach of these express warranties proximately caused Plaintiff's insureds to suffer consequential damages, including total loss of the subject Airplane in the November 30, 2018 crash and damage to property in the vicinity of the crash.

42.     Pursuant to the Corporate Aircraft insurance policy under which the subject Airplane was insured at the time of the crash, Old Republic paid to its

insureds the sum of $4,625,000, the insured value of the subject Airplane. On behalf

of its insureds, Old Republic further paid for property damage caused by the crash,

as well as payments to the decedents' statutory beneficiaries, and for expenses

incurred as a consequence of the crash, including but not limited to costs associated

with recovering the remains of the subject Airplane. Plaintiff Old Republic brings

the subrogation action against Defendant to recover all those amounts paid under the

policy pursuant to RCW 62A.2-313.

WHEREFORE Plaintiff, Old Republic, prays that judgment be entered in its

favor and against Defendant Tamarack Aerospace Group, Inc. in a sum in a sum

according to proof.

**(Third Action – Breach of Implied Warranty – RCW 62A.2-314, RCW 62A.2-315)**

43.    Plaintiff incorporates the preceding paragraphs by reference as though

fully set forth herein.

44.    Defendant Tamarack Aerospace Group, Inc. was at all times a

"merchant" with respect to the subject Tamarack Active Winglets system under

RCW 62A.2-104(1).

45.    The subject Tamarack Active Winglets are and were at all relevant

times "goods" under RCW 62A.2-105(1).

46.    Old Republic's insureds were in privity with Defendant Tamarack

Aerospace Group, Inc. and/or were the intended third-party beneficiaries of the

contract between Defendant Tamarack Aerospace Group, Inc. and EstoAir LLC.

47.    Pursuant to RCW 62A.2-314, this contract contains implied warranties of merchantability, including that the product: would pass without objection in the trade under the contract description; are of fair average quality within the description; are fit for the ordinary purposes for which such goods are used; run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and conform to the promises or affirmations of fact made.

48.  Pursuant to RCW 62A.2-315, this contract contains implied warranties of fitness for particular purpose.  At the time of contracting, Defendant Tamarack Aerospace Group, Inc. had reason to know Plaintiff's insureds' purpose for the subject Tamarack Active Winglets system and knew that Plaintiff's insureds were relying on their skill and judgment in selecting and furnishing suitable goods.

49.    Defendant Tamarack Aerospace Group, Inc. breached their implied warranties of merchantability.

50.    Defendant Tamarack Aerospace Group, Inc. breached their implied warranties of fitness for a particular purpose.

51.    Defendant Tamarack Aerospace Group, Inc.'s breach of their implied warranties proximately caused Plaintiff's insureds to suffer injury and damage, including total loss of the subject Airplane in the November 30, 2018 crash and

damage to property in the vicinity of the crash.

52.     Pursuant to the Corporate Aircraft insurance policy under which the subject Airplane was insured at the time of the crash, Old Republic paid to its insureds the sum of $4,625,000, the insured value of the subject Airplane.  On behalf of its insureds, Old Republic further paid for property damage caused by the crash, as well as  payments  to the statutory beneficiaries of the decedents, and for expenses incurred as a consequence of the crash, including but not limited to costs associated with recovering the remains of the subject Airplane.  Plaintiff Old Republic brings this subrogation action against Defendant to recover those amounts paid under the policy under RCW 62A.2-314 and RCW 62A.2-315.

WHEREFORE Plaintiff, Old Republic, prays that judgment be entered in its favor and against Defendant Tamarack Aerospace Group, Inc. in a sum according to proof.

## IV.     PRAYER FOR RELIEF

Plaintiff Old Republic Aerospace, Inc. requests that the Court enter judgment awarding the following relief:

1.     An order awarding Plaintiff its actual damages and/or any other form of monetary relief provided by law;

2.     An order awarding Plaintiff restitution and/or other equitable relief as the Court deems proper;

Bullivant|Houser|Bailey PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930

3.      An order awarding Plaintiff pre-judgment and post-judgment interest as allowed under the law;

4.      An order awarding Plaintiff reasonable attorney fees and costs of suit, including expert witness fees; and

5.      An order awarding such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by a 12-person jury on its complaint in the above-entitled action.

DATED:  November 12, 2020.

BULLIVANT HOUSER BAILEY PC

By *s/ Matthew Wojcik*
Matthew R. Wojcik, WSBA #27918
matt.wojcik@bullivant.com
Brittany A. Madderra, WSBA #48514
brittany.madderra@bullivant.com
BULLIVANT HOUSER BAILEY PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Tel: (206) 292-8930
Fax: (206) 386-5130

And

Jeffrey S. Behar, California State Bar # 81565
*(pro hac vice pending)*
jbehar@fwhb.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Tina I. Mangarpan, California State Bar
# 117898 (*pro hac vice pending*)
tmangarpan@fwhb.com
Ford, Walker Haggerty & Behar LLP
One World Trade Center, 27th Floor
Long Beach, California 90831
Tel: (562) 983-2500
Fax: (562) 590-3525

*Attorneys for Plaintiff, Old Republic
Aerospace, Inc.*

4827-6969-4161.2

**Bullivant|Houser|Bailey PC**
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930